**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ED MITCHELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 511 |
| v. | ) | |
| **VERIZON WIRELESS,** | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this court is Defendant Verizon Wireless' ("Defendant's") motion to compel arbitration and stay judicial proceedings. For the reasons discussed below, Defendant's motion is GRANTED.

**I.     BACKGROUND**

On January 28, 2005, Plaintiff Ed Mitchell ("Plaintiff") filed a complaint against Trans Union, LLC and Verizon Wireless alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. According to Plaintiff, the two companies have been reporting inaccurate information about his credit history and Verizon Wireless account to third parties. On May, 18, 2005, this Court granted Plaintiff's motion to voluntarily dismiss the case against Trans Union, LLC.

The remaining defendant, Verizon Wireless, now seeks to compel arbitration and stay these judicial proceedings in accordance with an arbitration clause in its Service Agreement with

-1-

Plaintiff. Plaintiff opposes Defendant's motion on the ground that the Service Agreement violates the FCRA, public policy, and the prohibition against unconscionable contracts.

**II. STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., which governs this action establishes a "federal policy favoring arbitration." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). To that end, the statute requires state and federal courts to rigorously enforce agreements to arbitrate, see Jain v. Mere, 51 F.3d 686, 688 (7th Cir. 1995), and provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court may issue an order compelling arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under this provision of the statute, the validity of an agreement cannot be at issue either. Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 867 (7th Cir. 1985).

A court may compel arbitration pursuant to the FAA if the following three elements are shown: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. Zurich American Insurance Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005). Accord Sharif v. Wellness International Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004) ("[I]f the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied."); Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co., 794 F.2d 1222, 1226 (7th Cir. 1986) ("The question of whether the parties

contracted to arbitrate a particular dispute is generally one for judicial determination."). The first element requires a court to decide whether there is an *effective* written agreement. See In re VMS Ltd. Partnership Securities Litigation, 26 F.3d 50, 51 (7th Cir. 1994).

Once a court determines that a dispute is arbitrable, it must grant any motion by the parties to stay legal proceedings. See 9 U.S.C. § 3.

III. ANALYSIS

   A. **Is there a *valid* written agreement to arbitrate?**

Plaintiff does not dispute that a written agreement to arbitrate exists. He consented to arbitration by signing the Service Agreement with the arbitration clause[1] (hereinafter "the arbitration agreement") and a Verizon Receipt stating that "I AGREE TO THE CURRENT VERIZON WIRELESS CELLULAR SERVICE AGREEMENT . . . . I UNDERSTAND THAT I AM AGREEING TO . . . SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN THE CSA." Def.'s Mem. in Support, Ex. B at 2.

---

[1] The arbitration clause states, in relevant part: "Independent Arbitration. ∞ INSTEAD OF SUING IN COURT, YOU'RE AGREEING TO ARBITRATE DISPUTES ARISING OUT OF OR RELATED TO THIS OR PRIOR AGREEMENTS. THIS AGREEMENT INVOLVES COMMERCE AND THE FEDERAL ARBITRATION ACT APPLIES TO IT. THE RULES ARE DIFFERENT AND THERE'S NO JUDGE OR JURY . . . . YOU AND WE EACH AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY LAW: (1) ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . . WILL BE SETTLED BY INDEPENDENT ARBITRATION INVOLVING A NEUTRAL ARBITRATOR AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER WIRELESS INDUSTRY ARBITRATION ("WIA") RULES, AS MODIFIED BY THIS AGREEMENT . . . ." Def.'s Mem. in Support, Ex. A at 3.

Plaintiff does dispute the validity of the written agreement. He argues that the entire Service Agreement is unconscionable because Defendant was the stronger, more experienced party; Defendant provided Plaintiff with a pre-printed contract containing a bevy of exclusions and terms that would befuddle the average consumer; and Defendant included a one-sided clause forcing Plaintiff to renounce his rights to a trial jury and risk having his claim heard by a prejudiced panel of attorneys and judges.

It is Plaintiff's burden to prove unconscionability, see Zobrist v. Verizon Wireless, 354 Ill. App. 3d 1139, 1149 (Ill. App. Ct. 2004), and courts have rejected each of Plaintiff's protests. In Illinois,[2] "[a] contract is unconscionable when it is improvident, oppressive, or totally one-sided, but mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." Streams Sports Club, Ltd. v. Richmond, 99 Ill.2d 182, 191 (Ill. 1983). Thus, in a case involving a different arbitration clause with Verizon Wireless, the Illinois Appellate Court held that the lone "fact that Verizon is a large corporate entity utilizing a standardized contract" with a "take-it-or-leave-it provision . . . does not require a court to reach the conclusion that the provision is unconscionable." Zobrist, 354 Ill. App. 3d at 1148. Rather, "fraud or other similar wrongdoing in the procurement of the agreement must be established in order to invalidate the clause as unconscionable." Id. (citing Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 367 (7th Cir. 1999). Finding no evidence that Verizon fraudulently procured the plaintiff's consent to arbitration, the court in Zobrist–as will the Court here–upheld the provision against a

---

[2] Neither party has contested the application of Illinois law to this case.

procedural unconscionability challenge.[3] A court considering a Verizon Wireless arbitration clause *identical* to the one here reached the same result in New Jersey, where the law on unconscionability corresponds to the law in Illinois.  See Ohai v. Verizon Communications, Inc., No. 05-729, 2005 U.S. Dist. LEXIS 25703, *14 (D.N.J. Oct. 28, 2005).  The Ohai court declined to find procedural unconscionability when, among other things, the meaning of Verizon's arbitration clause is not concealed and the clause is written in plain, unambiguous language that is not reduced to small print or hidden footnotes.  See id..

As to substantive unconscionability, Plaintiff complains that the arbitration agreement forces him to waive his right to a jury trial for an arbitrator who is likely to favor major corporations or, if the arbitration requirement does not apply, a judge who will conduct a bench trial.  This unconscionability argument fails for lack of support.  See, e.g., Hawkins v. Aid Association for Lutherans, 338 F.3d 801, 806 (7th Cir. 2003) (requiring appellants to cite authority before prevailing on the argument that losing access to court destroys or diminishes their benefits under the contract); Tezky v. Woodfield Chevrolet, No. 00 C 5718, 2001 U.S. Dist. LEXIS 24672 (N.D. Ill. Mar. 14, 2001) (holding that "mere preference for a jury does not mean that resolution of [the] dispute by a panel of arbitrators would entail prejudice.").  The paucity of support in Plaintiff's brief overall helps to explain why "the doomed 'unconscionability' argument . . . has been rejected in this circuit as often as it has been raised."  Oblix, Inc. v.

---

[3] A court must find a contract both procedurally and substantively unconscionable before refusing to enforce it.  Zobrist, 354 Ill.App.3d at 1148.  Procedural unconscionability requires some impropriety during the contract's formation that deprived a party of a "meaningful choice."  Id.  Substantive unconscionability "relates to situations where a clause or term in a contract is allegedly one-sided or overly harsh."  Id.

Winiecki, 374 F.3d 488, 491 (7th Cir. 2004). This Court finds that arbitration agreement is not unconscionable; therefore, its validity is not in question.

### B. Is Plaintiff's dispute within with the agreement's scope?

The second question–whether Plaintiff's FCRA claim falls within the scope of the arbitration agreement–is also answered in the affirmative.

Arbitration provisions incorporating the "arising from or relating to" language seen here have been described as "extremely broad and capable of an extensive reach." Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir.1999). In this Circuit, such broad provisions create a presumption of arbitrability. See id.; see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, International, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) (holding that the "arising out of " language "reaches all disputes having their origin or genesis in the contract"). Thus, it is apparent, even without invoking the principle that doubts concerning scope are resolved in favor of arbitration, see Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1985), that Plaintiff's complaint about the handling of wireless account information falls within the scope of the arbitration agreement. Plaintiff, however, presses on: He argues that arbitrating an FCRA claim, in particular, would violate public policy and the FCRA itself.

Plaintiff ignores the evidence that courts routinely deem FCRA claims arbitrable. The courts in Degraziano v. Verizon Communications, 325 F. Supp. 2d 238, 241 (E.D.N.Y. 20004) and Ohai, 2005 U.S. Dist. LEXIS 25703 at *4, for example, held that arbitration agreements identical to the one here required arbitration of an FCRA claim. See also Jacobsen v. J.K. Pontiac GMC Truck, Inc., No. 01 C 4312, 2001 WL 1568817, *4 (N.D. Ill. Dec. 10, 2001)

(finding that an arbitration clause encompassed the plaintiff's FCRA claim); Sarver v. Trans Union, LLC, 264 F. Supp. 2d 691, 693 (N.D. Ill. 2003) (same).

Moreover, Plaintiff has not met his burden of showing that his statutory claim *cannot* be arbitrated. See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (U.S. 2000). "In determining whether statutory claims may be arbitrated, [the court must] first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 90. Plaintiff does not dispute that he and Defendant agreed to arbitrate, and he does not argue that the FCRA intended to preclude plaintiffs from waiving judicial remedies in favor arbitration. Plaintiff's "statutory intent" or "public policy" argument, should this be his attempt to address preclusion, is a lengthy, undisciplined discussion that explains to the Court minor matters such as (and here, the Court will paraphrase) "damages under the FAA are called 'statutory damages'" and "major companies can afford retainer fees individual plaintiffs cannot" but fails, in four pages, to offer *any support at all*–even one citation from the case law, a congressional report, secondary sources, or the statute–for propositions such as enforcing the arbitration clause would "disarm the legislation put into place by Congress," sanction Defendant's "belief that it can circumvent the laws," and "ultimately de-legitimize arbitration as a way to settle normal commercial disputes." Pl.'s Response Mem. at 7, 8.

Plaintiff's argument that arbitration agreement violates the FCRA also fails. Plaintiff is correct that the Service Agreement bars recovery of attorney's fees and punitive damages, while the FCRA expressly awards them. See 9 U.S.C. § 1681o, 1681n; Def.'s Mem. in Support, Ex. A at 3. But the arbitrator, not the court, determines the validity of these ancillary provisions.

Carbajal v. H & R Block Tax Services, Inc., 372 F.3d 903, 906 (7th Cir. 2004); Hawkins, 338 F.3d at 807 (holding that "complaints about the unavailability of remedies [such as attorney's fees and punitive damages] first must be presented to the arbitrator").  Furthermore, the Seventh Circuit has observed "that no general doctrine of federal law prevents people from waiving statutory rights (whether substantive or procedural) in exchange for other things they value more, such as lower prices or reduced disputation. Whether any particular federal statute overrides the parties' autonomy and makes a given entitlement non-waivable is a question for the arbitrator." See Carbajal, 372 F.3d at 906-07 (internal citation omitted).  In short, on a motion to compel arbitration, this Court's duty is limited: "Once the court determines that an arbitration clause is enforceable, the status of the other contract terms is for the arbitrator to decide."  We Care Hair Development, Inc. v. Engen, 180 F.3d 838, 844 (7th Cir. 1999).

### C. Is there a refusal to arbitrate?

It is undisputed that Plaintiff objects to arbitration.  Having answered all three questions in the affirmative, this Court is satisfied that the arbitration agreement is valid and enforceable and hereby orders the parties to proceed to arbitration.  This action is stayed pending arbitration.

## IV.　CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay judicial proceedings is granted.

                                                Enter:

                                                /s/ David H. Coar
                                                David H. Coar
                                                United States District Judge

Dated: **March 31, 2006**